

# NUMBER 13-16-00109-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

EMMA PEREZ TREVIÑO,
CARLOS SANCHEZ,
THE McALLEN MONITOR,
MARCI CALTABIANO-PONCE,
VALLEY MORNING STAR, AND
AIM MEDIA TEXAS, LLC,                                    Appellants,

v.

MARK CANTU,                                              Appellee.

**On appeal from the 92nd District Court
of Hidalgo County, Texas.**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

MOBILE VIDEO TAPES INC.,
CHANNEL 5 NEWS AND
JOHN KITTLEMAN,                                                              Appellants,

v.

MARK CANTU AND
LAW OFFICE OF MARK CANTU,                                          Appellees.

**On appeal from the 92nd District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

This consolidated interlocutory appeal concerns the denial of various media defendants' motions under the Texas Citizens Participation Act ("TCPA") to dismiss distinct, yet related, lawsuits filed against them by appellee Mark A. Cantu and the Law Office of Mark A. Cantu (collectively "Cantu," unless otherwise noted). *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West, Westlaw through 2015 R.S.). The appellants in appellate cause number 13-16-00109-CV are: Emma Perez Treviño, Carlos

Sanchez, The McAllen Monitor, Marci Caltabiano-Ponce, Valley Morning Star, and Aim Media Texas, LLC (collectively "The Monitor Defendants," unless otherwise noted). The appellants in appellate cause number 13-16-00111-CV are: Mobile Video Tapes, Inc., Channel 5 News, and John Kittleman (collectively "the Channel 5 Defendants," unless otherwise noted).

We reverse and render in part and remand in part on both appeals.

## I.  BACKGROUND

### A.  The Monitor Lawsuit (Cause Number 13-16-00109-CV)

In May 2015, Cantu sued The Monitor Defendants seeking damages for defamation, business disparagement, and intentional infliction of emotional distress regarding two news articles featuring Cantu and written by newspaper reporter Emma Perez Treviño.

#### 1.  The Castillo Case Article

The first article was entitled "Texas Supreme Court: Attorney, rogue juror in Limas' court provoked settlement." The article reported on a case in which Cantu represented a family in an action against Ford Motor Company following a rollover crash ("the Castillo case"). *See generally Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 617–23 (Tex. 2014) (per curiam) (op. on reh'g). The article reported on the Castillo case's subsequent appeal to the Texas Supreme Court and that court's ultimate disposition of the case. The article mentions that "the court found evidence that McAllen lawyer Mark A. Cantu had been in collusion with a juror to maneuver the $3 million settlement from Ford, during a 2004 jury trial in the 404th state District Court presided over by former Judge Abel C. Limas." Limas is currently serving a 72–month sentence in federal prison for taking bribes from attorneys

3

in exchange for favorable rulings. *See id.* at 618 n.1. The article specifically mentions that the rulings for which Limas was sentenced "do not include" his role in the Castillo case as presiding judge. Additionally, the article quoted a public affairs administrator from the State Bar of Texas's Office of Chief Disciplinary Counsel who had no comment on whether it was investigating Cantu in the Castillo case. Lastly, the article printed a verbatim summary of the Castillo case as recited by the Texas Supreme Court in its opinion and also outlined the procedural history of the case, including the initial trial and its numerous appeals.

### 2. The Cantu Article

The second article is entitled "Attorney in Ford case has long history of disciplinary concerns." The article leads with a discussion of a 2011 bankruptcy proceeding involving Cantu, his wife Roxanne, and their affiliated corporation Mar-Rox, Inc. *See generally In re Cantu*, No. 08-70260, 2011 WL 672336, at *1 (Bankr. S.D. Tex. 2011). The article directly quotes paragraphs from the bankruptcy judge's opinion, including one in which the bankruptcy judge requests that the State Bar of Texas investigate Cantu. Finally, the article outlines Cantu's disciplinary history with the State Bar dating back to the early 1990s.

### B. The Channel 5 News Lawsuit (Cause Number 13-11-00111-CV)

On June 8, 2015, Cantu also filed suit against the Channel 5 Defendants seeking damages for defamation, business disparagement, and intentional infliction of emotional distress related to an unidentified news report that featured Cantu and his law office. Cantu's petition, however, alleges that the Channel 5 Defendants' statements concerned Cantu and Limas.

4

**C.     Media Defendants' Motions to Dismiss**

Shortly after Cantu filed his lawsuits, The Monitor Defendants and the Channel 5 Defendants each filed a motion to dismiss Cantu's lawsuits pursuant to the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. The Monitor Defendants asserted in their motion that Cantu's complaints against them related to their reporting "on an issue of public concern, namely the conduct of [Cantu] as an officer of the Texas courts." The Channel 5 Defendants asserted the same grounds in their motion to dismiss Cantu's lawsuit under the TCPA, namely that its reporting involved "an issue of public concern, namely the conduct of [Cantu] as an officer of the Texas courts." In support of their respective motions, The Monitor Defendants attached an affidavit by newspaper editor Carlos Sanchez, and the Channel 5 Defendants attached an affidavit by Channel 5 News' general manager, John Kittleman.

After rescheduling hearings on both motions, the trial court ultimately held hearings on each motion to dismiss on January 13, 2016, but no testimony was taken. Cantu did, however, file responses to each motion to dismiss. In response to The Monitor Defendants, Cantu filed an affidavit essentially repeating the allegations set forth in his petition against The Monitor Defendants. In response to the Channel 5 Defendants, Cantu filed a more detailed response, which attacked Kittleman's affidavit on evidentiary grounds. Cantu also attached an affidavit to his response, explaining why and how the Channel 5 Defendants defamed him, and also stated that "given the opportunity" he would submit "a clear [and] specific affidavit of one of my former clients and the negative reaction and thoughts regarding me and my office upon hearing the news report."

The trial court did not rule on either motion to dismiss after the hearing, thus, the motions were denied by operation of law, and these interlocutory appeals followed. *See id.* § 27.008(a).

## II.    MOTIONS TO DISMISS UNDER THE TCPA

By four issues, which we treat as one, The Monitor Defendants assert that the trial court erred by denying their motion to dismiss by operation of law. By two issues, which we likewise treat as one, the Channel 5 Defendants assert that the trial court erred in denying their motion to dismiss by operation of law.

### A.    Applicable Law and Standard of Review

The TCPA provides for the expedited dismissal of a legal action that implicates a defendant's right of free speech or other First Amendment right when the party filing the action cannot establish the TCPA's threshold requirement of a prima facie case. *Sullivan v. Abraham*, 488 S.W.3d 294, 295 (Tex. 2016).

A two-step process is initiated by motion of a defendant who believes that the lawsuit responds to the defendant's valid exercise of First Amendment rights. Under the first step, the burden is initially on the defendant-movant to show "by a preponderance of the evidence" that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding) (citing TEX. CIV. PRAC. & REM. CODE § 27.005(b)). Relevant here, the "exercise of the right of free speech" is statutorily defined as a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A matter of public concern includes an issue related to: (1) health or safety; (2) environmental, economic,

6

or community, well-being; (3) the government; (4) a public official or public figure; or (5) a good product, or service in the marketplace. *Id.* § 27.001(7). The TCPA does not require a movant to present testimony or other evidence to satisfy the movant's evidentiary burden. *Hicks v. Group & Pension Admins., Inc.*, 473 S.W.3d 518, 526 (Tex. App.—Corpus Christi 2015, no pet.).

If the movant is able to demonstrate that the plaintiff's claim implicates one of these rights, the second step shifts the burden to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *In re Lipsky*, 460 S.W.3d at 587 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c)). In determining whether the plaintiff's claim should be dismissed, the court is to consider the pleadings and any supporting and opposing affidavits. *Id.* Within defined time limits, the court must then rule on the motion and must dismiss the plaintiff's claim if the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case. *Id.* The phrase "clear and specific evidence" has been defined as more than mere notice pleading, but not more than the burden of proof required for the plaintiff to prove at trial. *See id.* at 590–91. Instead, a plaintiff must provide enough detail to show the factual basis for its claim. *Id.* In a defamation case that implicates the TCPA, pleadings and evidence that establishes facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss. *Id.* at 591.

In reviewing this two-step process under the TCPA, we first examine whether a defendant moving to dismiss under the TCPA has met his burden by a preponderance of evidence as a legal question that we review de novo. *See Newspaper Holdings, Inc. v.*

7

*Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). If a defendant meets his burden, we then examine the pleadings and evidence in a light favorable to the plaintiff to determine whether the plaintiff has marshaled "clear and specific" evidence to support each alleged element of their causes of action. *Id.* at 80–81.

## B.     The Monitor Lawsuit

In their motion to dismiss and accompanying affidavit from Sanchez, The Monitor Defendants assert that the news stories at issue involve "an issue of public concern, namely the conduct of [Cantu] as an officer of the Texas courts." We conclude that both articles at issue in this case are matters of public concern because they concern the practice of law, public corruption, cases filed in our judicial system, and disciplinary proceedings brought in Texas against a lawyer licensed by the Supreme Court of Texas. All of these issues are undoubtedly matters of public concern. *Cf. Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, no pet.) (holding that reporting on legal services involved a matter of public concern). Accordingly, we hold that The Monitor Defendants met their initial burden under the TCPA to establish that they were exercising their right to free speech. *See In re Lipsky*, 460 S.W.3d at 586.

Next, we examine Cantu's causes of action for defamation, business disparagement, and intentional infliction of emotional distress.

To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure,

or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

Business disparagement and defamation are similar in that both involve harm from the publication of false information. *In re Lipsky*, 460 S.W.3d at 591. To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

Lastly, the elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or reckless, (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993).

At the motion to dismiss hearing, Cantu did not bring forth any evidence or provide any testimony to defend against the motion to dismiss. Instead, Cantu solely made arguments to the trial court. Furthermore, Cantu filed an affidavit *after* the motion to dismiss hearing was held that essentially repeats his allegations in his petition and contains conclusory statements. However, even if we were to consider this affidavit, it does not help Cantu satisfy his burden under the TCPA. Cantu failed to provide the trial court with clear and specific evidence to show the factual basis for his claims against The Monitor Defendants. *See In re Lipsky*, 460 S.W.3d at 591. Accordingly, the trial court erred by not granting The Monitor Defendants' motion to dismiss. We sustain The Monitor Defendants' issue on appeal.

## C.     The Channel 5 News Lawsuit

Like The Monitor Defendants, the Channel 5 Defendants filed a motion to dismiss Cantu's lawsuit against them under the TCPA because the reports that Cantu based his lawsuit on were constitutionally protected because they reported on a matter of public concern. As explained above, news reporting on the practice of law, public corruption, cases filed in our judicial system, and disciplinary proceedings brought in Texas against a lawyer licensed by the Supreme Court of Texas involve matters of public concern. Accordingly, we hold that the Channel 5 Defendants met their initial burden under the TCPA. *See id.* at 586.

Cantu sued the Channel 5 Defendants for the same causes of action as The Monitor Defendants: defamation, business disparagement, and intentional infliction of emotional distress, and we will not repeat the elements for each cause of action again. Unlike in the other case, however, Cantu filed a more robust response to the Channel 5 Defendants' motion to dismiss, as well as an affidavit. In his affidavit, Cantu asserted in conclusory fashion that the Channel 5 Defendants' news report "injured [his] reputation and exposed [him] to public hatred, contempt, ridicule, and financial injury." Cantu fails to explain more or offer any other proof of how these reports injured him. Further, Cantu asserted that:

> [G]iven the opportunity, I would submit a clear [and] specific affidavit of one of my former clients and the negative reaction and thought regarding me and my office upon hearing the news report. I would also submit a clear and specific affidavit of a member of the community and potential client who upon hearing the news report and looking on line and seeing the written publication as well decided not to hire to represent her and her daughter whom had been seriously injured in a vehicular collision and were in need of the services of an attorney. I would also offer the affidavit of an Accountant regarding some general principles of accounting and basically

10

confirming that loss of business results in loss of that and possibly other income.

> Those affidavits would be submitted as a sample of the injury that the publications caused me.

Despite these representations regarding how he would bring forth clear and specific evidence to establish his prima facie case against the Channel 5 Defendants, Cantu never followed through. Therefore, the trial court was left only with Cantu's pleadings and his affidavit. We hold that this is not enough clear and specific evidence under the TCPA to overcome his burden and establish a prima facie case. *See In re Lipsky*, 460 S.W.3d at 591. Accordingly, the trial court erred by not granting the Channel 5 Defendants' motion to dismiss. We sustain the Channel Five Defendants' issue on appeal.

**D.     Summary**

In summary, Cantu failed to meet his burden to overcome dismissal under the TCPA because he failed to put forth clear and specific evidence to establish his prima facie case for his causes of action against The Monitor Defendants and the Channel 5 Defendants. Accordingly, the trial court erred in failing to grant the motions to dismiss. We sustain both The Monitor Defendants' as well as the Channel 5 Defendants' issues on appeal.

### III.     CONCLUSION

We reverse the trial court's denial of The Monitor Defendants' motion to dismiss in cause number 13-16-00109-CV and render an order granting the motion to dismiss. We also reverse the trial court's denial of the Channel 5 Defendants' motion to dismiss in cause number 13-11-00111-CV and render an order granting the motion to dismiss.

11

Finally, we remand both cases for further proceedings consistent with this opinion.  *See*

Tex. Civ. Prac. & Rem. Code Ann. § 27.009.


                                        GINA M. BENAVIDES,
                                        Justice

Delivered and filed the
2nd day of February, 2017.